DUDLEY
*v.*
DUDLEY.

Rec. 1762.
Fol. 415.

Deviſe as follows : " I give to my Son W. my new Farm in R.," " from whence he ſhall annually ſupply and bring Home to his Mother her Firewood during her Life." " I alſo give him my Farm of 1000 Acres

## Dudley *verſ.* Dudley & al. (3)

THE late Governour Dudley, by his Will, de-viſed as follows :

" I give my Wife One Hundred Pounds per " Annum, to be paid quarterly during her Life by " Paul Dudley my eldeſt Son, out of the Iſſues and " Rents of my Eſtates herein given him.

" I give to my Son, William Dudley, my new " Farm in the Woods in Roxbury, containing 150 " Acres with the Woodland there, purchaſed of " Devotion Craft, from whence he ſhall annually ſupply

---

(3) This was a review of a " plea of partition " brought by the younger children of William Dudley, againſt Thomas the eldeſt ſon. The ſpecial verdict found that the premiſes were the ſame called by the teſtator his " farm of a thouſand acres at Manchaug," that William died inteſtate, and that Thomas then entered on the premiſes ; " if therefore the ſaid William, by force of the will aforeſaid, took an eſtate in fee ſimple in the thouſand acres aforeſaid, then they find for the defendants coſts ; otherwiſe they find for the original defendant and now plaintiff."

" ſupply and bring Home to his Mother her Fire-
" wood during her Life.

" I alſo give him my Farm of one 1000 Acres
" at Manchaug and Three Hundred Pounds toward
" building him an Houſe.

" I have already diſpoſed in Marriage of my
" Four Daughters, and paid them what I intended.

" I further give each of them 1000 Acres, to be
" taken out of my 6000 Acres in the Town of Ox-
" ford; and to my Nephew Daniel Allen, and my
" Niece Ann Hilton, 500 Acres, out of the ſame
" Dividend, to be equally divided between them;
" all thoſe Lands to deſcend to the Children ſev-
" erally, and the *Heirs of their Bodies.*

" To my eldeſt Son Paul I give the Inheritance
" of all my Houſes and Lands in Roxbury, Oxford,
" Woodſtock, Newtown, Brookline, Merrimack, or
" elſewhere, all my Stock, Debt, Money, and all
" Eſtate belonging to me whatſoever, except as
" above ſet down. *And my Will is that my Lands*
" *deſcend after the Manner of England forever; to the*
" *Male Heirs firſt, and after to the Females. If either*
" *of my Sons die without Male Iſſue, his Brother and*
" *his Male Iſſue ſhall inherit the Lands herein be-*
" *queathed,*" &c.

The Queſtion in this Caſe was, whether William
Dudley took a Fee Simple by his Father's Will.

*Mr.*

1762.

DUDLEY
*v.*
DUDLEY.

at M. and £300 toward building him an Houſe." After other Legacies and a Reſiduary Deviſe, the following: " And my Will is that my Lands deſcend after the Manner of England forever; to the Male Heirs firſt and after to the Females. If either of my Sons die without Male Iſſue, his Brother and his Male Iſſue ſhall inherit the Lands herein bequeathed." *Held*, that W. took a Fee Simple in the " Farm of 1000 Acres at M."

1762.

DUDLEY
*v.*
DUDLEY.

*Mr. Otis for the Fee Simple.* (4)   The Words upon which I suppose they build their Fee Tail are these, " If either of my Sons die without Male Issue, his " Brother," &c.   There are no Words precedent to these which can be supposed in the least to favour that Opinion, but on the contrary are inconsistent with it; he must have intended to have given him a Fee in the 1000 Acres, or his End, which was to build him an House, could not be answered, for £300 can't be supposed any way sufficient, and therefore we must suppose he designed William should sell the Land; and it is Law and Reason that a special Devise should take Effect, which could not otherwise, a general Clause notwithstanding, nor is the Law to be wrested in favor of such Estates; for however Estates Tail were once favoured and praised, as in the Statute *De Donis*, yet Ld. Coke tells us they were convinced of their Mistake, and exclaims in pretty full Terms.   Co. L. 20.   Wood, Inst.   And here the Reason is greater than in England, for here all Estates are partable. (5)

Nay I don't think the Words give even Paul an Estate Tail.   The Intention of the Testator is one of the grand Principles, and shall not be counteracted, and it is to be favoured as far as possible consistent with the Rules of the Common Law; and unless there are some operative Words, Fee Simple must

---

(4) The MS. report of the arguments in this case bears evidence of being the original minutes taken in court.   A little confusion, and an occasional defect in grammar, are thus accounted for.

(5) See *post*, *Baker* v. *Mattocks.*

muft be fuppofed to be given. Now here are no exprefs Words in Favour of a Fee Simple. "And " my Will is that my Land defcend after the Man- " ner of England forever, to the Male Heirs firft, " and after to the Females, &c." I think it mani- feft his Intention was, that they fhould defcend ac- cording to the Common Law, which knows no Eftate Tail; and that being his Intention, the Law will not admit an Inheritance contrary to the known Law of the Country; and this being contrary to the Law defcends as a Fee Simple, and the Word "Male Heirs, &c." fhall be attributed to Unfkillfulnefs.

*Mr. Kent for the Tail.* Mr. Otis can't fuppofe an Eftate Tail can't be made in this Province, fo we need only inquire into the Teftator's Intention. Cites 3 Salk. 394, *Fifher* vs. *Nichols*, of the favourable Conftruction of Wills. In Paul's Gift there was nothing enjoined him, but annual Payments which the Profits would fecure. "To William I give " Manchaug Farm, and £300 towards building him " an Houfe," they are evidently feparate. He gives him Manchaug Farm, and moreover I give him £300 towards building him an Houfe. To Paul he gives the *Inheritance* of his Land, &c.; this Word is ufed in Tails. Vid. Cafes in Eq. Abr. 178, 179. 1 Salk. Tit. Devife, 234.

*The Court* afked, as there had been no Authorities yet produced on the other Side, whether it would not be more regular to have them read now, before the Council in Favour of the Tail clofed. Upon which *Mr. Gridley* produced his Authorities. 1 Inft. 9 b, any Eftate charged is a Fee Simple. 2 Peere Wms.

Wms. 673. Siderfin, 312. Moore's Rep. 53. Viner, Tit. Devife, 82. 3 Mod. 82.

*Mr. Trowbridge for the Tail.* In his firft Devife to his Wife, he gives her £100, for Paul to pay out of the Rents and Iffues of his Eftate, which evidently exclude from his Intention to give Paul a Fee Simple; fo in the Gift of the Wood it is idle to fay that is greater or anything near equal to the yearly Rents of the 150 Acres. And as to the Manchaug Farm and £300; it is true £300 would not build him an Houfe at Roxbury, but does it appear that he meant fo? Perhaps, and moft probably, he intended on the Farm at Manchaug.

*Ch. Juft.* The words are build *him* an Houfe; not an Houfe fimply, but *him*, one whom he knew was to live at Roxbury.

*Trowbridge continues.* The firft Words in a Will may direct, but the laft fhall controul, and this is the Difference between Wills and Deeds. The Devife to his Couzins is in thefe Words, " *to defcend to* " *the Children feverally, and the Heirs of their Bodies.*" A Fee Tail *may defcend.* If in the firft Words he intended a Fee Simple, in the laft he altered his Mind, and intended to controul the firft. " If *either* " die without Male Iffue, then," &c. — *either.* A Devife of this Sort is as great an Eftate Tail as can be given, and the Word Body fhall be fupplied. Lilly, Tit. Devife. 6 Coke, 16, *Collier's Cafe.* Ventris, 230. Hawk. Abr. 17. Had he defigned it fhould defcend as Fee Simple in England, it would have
defcended

deſcended to the Daughters of William before the Sons of Paul, &c., but here it is otherwiſe.

*Mr. Gridley for the Fee.* The Intent of the Deviſor is the only Thing your Honours will govern yourſelves by, (Vid. Peeré Wms. *ut ſupra,*) and that Intention is to be ſpelt out by little Hints, by other Deviſes, &c. Viner, Tit. Deviſe, 182. Notwithſtanding 'tis a Deviſe he ſays 'ſhall *deſcend.*' He deſigned William ſhould ſell, and he muſt ſell, and that gives a Fee Simple, as much as expreſs Words. He deſigned William ſhould live in Roxbury, and £300 is not ſufficient to build him an Houſe there, a Dwelling Houſe. The Law takes Notice of the Rule of Grants, Words in the Beginning and End refer to the Whole. Sid. *ut ſupra.* It is not—I give 1000 Acres, I give him £300 towards building him an Houſe, but they are ſo coupled as to be the ſame; I give him 1000 Acres and £300 towards building him an Houſe. Vid. Moore's *ut ſup.* (*Ch. Juſt.* In the Authority you cite, they were each equally applicable to the Purpoſe, here not: Land does not ſeem ſo much ſo as Money.) In this Country we make our Real Eſtate almoſt Perſonal Eſtate by Act of Parliament, and our own Acts; beſides, Gov. Dudley did not perhaps leave a Sufficiency in Money. The Word *deſcend* I grant is uſed in Tails, but when it is uſed, there we always uſe the proper expreſs, Words of Tail; here it is—ſhall deſcend to him—not the Heirs of the Body, &c. Eſtates Tail can never be ſuppoſed by a Deviſe after the Manner of England, for being a minor Eſtate ſhould have been mentioned in expreſs Words. Suppoſing the Females deceaſe, there is

no

1762.

DUDLEY
v.
DUDLEY.

no further Deviſe, if it is a Tail. The Law of this Province forbids his giving it as the Law of England : But if he meant ſo, it could not be Tail, for it is the Common Law. I imagine Governor Dudley thought that was the Manner of England, that the Sons of the other ſhould take excluſively of the Daughters of the other, and the Will is inaccurate throughout as to the Daughters. Shall what is underſtood be ſet aſide by one inſenſible Expreſſion ?

It was moved by *Mr. Kent*, and ſeconded by *Mr. Trowbridge*, that they might be heard again before Judgment, and *the Court* thinking it a Matter of Nicety and Conſequence, deſired a further Argument, and continued it to the next Term for Judgment. (4)

*Mr. Otis.* The ſingle Queſtion is, whether theſe Words, " I alſo give him my Farm of 1000 Acres at Manchaug and Three Hundred Pounds to build him an Houſe," compared with the whole Will, make a Fee Simple or a Tail. The Words of Acts executed in the Life are to be " to Heirs forever," in a Fee Simple, " Heirs of the Body " general, Male or Female, in a Fee Tail; greater Indulgence is to be given to Wills.

I ſhall endeavour to ſhow that from this Clauſe by itſelf, or conſidered with Reſpect to the others, it muſt

---

(4) The report of the caſe accordingly breaks off at this point in the MS., and is reſumed between the caſes of *Gardner* v. *Purrington* and *Rogers* v. *Kenrick*, decided at the next term. For convenience, however, it is printed as a whole.

muft be the Intention of Dudley to give his Son a Fee Simple; and feparately confidered, there could be no Doubt; but 'tis the Claufe " after the Manner of England, &c." which caufes it. The Queftion will be whether the laft Words create a Tail in any, even to the Eftate given Paul, and if it does, whether they extend through the Whole. Ld. Hobart fays the two great Principles upon which all Devifes hang, are the Intention of the Teftator, which fhall be indulged as far as the Rules of Law admit.

I think the Confideration of the Intention, is the moft rational Way of judging of any Will; and I think whoever does that will think any Eftate Tail remote from the Teftator's Intention. The firft Words are only an Inheritance according to the Intent of the Common Law; his Intent was, I allow, to make a Common Law Defcent, Spite of the Province Law, — to cut off his Daughters only. We fhall confider how far this Intent is to be indulged. No Man fhall create an Eftate contrary to the Laws of his Country; we know none according to the Courfe of the Common Law. As for the other Words of the Will, Manchaug Farm is given for fuch a Purpofe, as could not be anfwered by fuch an Eftate as they contend for; he has it given to build an Houfe, which he could not do, if he had only his Life in it. Co. Lit. 9, b. It is an old Principle, that paying is an Argument that the Land fhall go. It has been faid that a Devife of Woodland formerly in this Country conveyed a Fee Simple, and that it has been adjudged fo; any Words that can amount to an Intent that the De-
vifee

1762.

DUDLEY
v.
DUDLEY.

viſee ſhall have the Advantage of the Whole of it, ſhall have a Fee; it is not the firſt or laſt Part of a Will that ſhall ſtand, but the Whole together. Viner, 324, Tit. Deviſe. If he intended he ſhould reap the ſame Benefit, as he would if it had been a Fee, it ſhall be. Viner, 224, 13. Will to be taken altogether. Ibid. 182, 11, 12, 13. His Intent being contrary to Law, firſt Deviſees take a Fee Simple. Ibid. 229. Swin. 165, 141. Entails diſ-favoured.—No Tail unleſs the firſt Words give a Fee Simple; none where it is given in any ſuch Manner. The firſt Words may be controuled, where it is a plain Fee Simple, here it is not; he tries to invent a new Conveyance, his Words are apt to convey according to the Law of England; he muſt either give it according to the Cuſtom of the Country, or in Fee Tail general or ſpecial. An implied Eſtate Tail has never been raiſed when the firſt Words were to give an Eſtate unknown to the Law of the Country. No Teſtator was ever inter-preted to mean to give a Tail becauſe that came neareſt to his Intention.

Mr. *Gridley's* Authorities: Sid. 312—Rule that firſt and laſt Words relate to the whole; middle to the middle only. Moor, Caſe 153, p. 52. Plowd. Comment. 540. Viner, Tit. Deviſe, 182, 11. 3 Lev. 111. 4 Mod. 154. 3 Lev. 125. 3 Mod. 182. Styles, 276, 392.

Mr. *Auchmuty.* I ſhall conſider this by looking into the Words of the Will, collect the Intent, and compare it with the Rules of Law.—" His Brother and his Male Iſſue ſhall inherit." Theſe Words are

are defcriptive of an Eſtate Tail, and no other. The firſt Words are liable to be reſtrained, controuled, or defeated by the laſt; if a laſt Word contradict the firſt, the laſt ſhall ſtand. 1 Lilly, 449. Co. Lit. 112, b. The Words relate as well to William as Paul. Cro. Ja. 448. This is a Cafe Mr. Otis ſaid could not be found. Cro. Ja. 695, *Chadock* v. *Cowley.* It ſeems abſurd that an expreſs Eſtate may be controuled by latter Words, and yet that where there is no certain Eſtate given by the firſt Words, that they ſhall not; I ſhould think they might *a fortiori.* 9 Coke, 128, *Sonday's Cafe.* 1 Ld. Raymond, 185, *Baker* vs. *Wall.* Ib. 568, *Nottingham* vs. *Jennings.* Comyns, 539, *Brice* vs. *Smith.* I cite theſe to ſhow the firſt Words need not be expreſs, and that the laſt ſhall explain the firſt. I utterly deny that the giving Woodland could by Law give a Fee; but if that be the Cafe, when the Teſtator afterwards explains his Meaning, that muſt caufe it to be otherwiſe. As to the Practice of the Court, the Rules of Law by being recollected would deſtroy it. I believe no Practice agreeable to that Rule of Woodland can be brought, and if there can, not where there are other ſuch Words as are here.

As to the Houſe, it does not appear that it was to build an Houſe at Roxbury; he was at that Time building an Houſe there, and the Deviſe, which takes no Effect till the Death of the Teſtator, might be ſome Years off. — Could he not have paſſed it by Deed, had that been his Intent? It is much more rational to conclude, that, as he had given him a Farm, he intended he ſhould live there, therefore gave him £300 to build him an Houſe
there,

there, to encourage the Settlement: There are two Tracts given William and Paul much in the ſame Words. · I can't find any Reaſon why they ſhould be confined to Paul; all the Lands therein bequeathed, in Caſe one died without Iſſue Male, are given to the other; he deſigning to entail all his Lands to the Survivor of his Sons, and his Male Iſſue, he has done it. I agree he intended to exclude the Daughters; could he then think he was giving a Fee Simple, when he expreſsly excludes them? He has not given a general Eſtate Tail, but confined it to Male Iſſue — They ſay he is making a new Eſtate, I ſay he has made an old one. In the Caſe of Raymond, 'tis ſaid he intended an Eſtate Tail, becauſe the Daughters were excluded. Take it as a Tail, all Purpoſes will be anſwered, the Daughters will be excluded, the Heirs Male will have it; and 'tis a Tail with Croſs Remainders, all which he ſeems to have had in View. The Heir-at-Law is favoured — ſo he is here: As to the paying, it is not always denotive of a Fee: The Wood is out of Roxbury, what is that to Manchaug? He has given that Farm, and ordered that Wood to be furniſhed; there is a Difference where a Sum in groſs is ordered, and where an annual Sum not exceeding the Rents. Co. Lit. 9, b. There is an Authority that ſays, where he gives it ſpecially, it is not an Inheritance. 2 Bacon. William could not be a Loſer by ſuch a Payment. Gilbert cites Cro. Eliz. 498. If the Deviſor orders A to pay B a Sum in groſs, this gives a Fee, though not even then, I ſuppoſe, if he afterwards explains it otherwiſe. As to the Authorities of Viner, they relate only to the Conſtruction of Wills, which we agree with them:

As

As for the Caſe from Moor, of the Coats, (5) they were to be paid forever: It would be inconſiſtent, but that as the Incumbrance was perpetual, the Eſtate ſhould be perpetual alſo. The other Moor Caſe is only that all Parts of a Will are operative, we agree to it, if they can be reconciled. How can it be ſuppoſed the Land as well as £300 are to go towards building him an Houſe?—the other Words of the Will diſpoſe of the Land otherwiſe, this is in Anſwer to the Grammar Caſe (6); Plowden's Caſe is only the Say of Council. Moor's Caſe of the Item (7) is anſwered by Cro. Ja. 695. The Intention of the Will can be no otherwiſe anſwered than by Tail;—if a Tail not an Iota is loſt.

_Mr. Trowbridge._ We all agree that the whole Will is to be taken together; that if the firſt Words are doubtful, the laſt may explain them, but if the firſt are expreſs, the latter ſhall not controul them. It muſt be abſurd to ſuppoſe that the Farm as well as Money was given to build an Houſe; in ſome Caſes the _Item_ may couple, in ſome not. 5 Co. 7, _Wyndham's Caſe._ 6 Co. 61, _Catesby's Caſe._ That the Word "_and_" is to be governed according to the Subject-Matter.—If there is any particular Eſtate limited, paying does not make a Fee. 1 Vent. 227. Gilb. Law of Deviſes. Comyn's, 539, _Brice_ vs. _Smith._ Thoſe Lands which he gives his Daughters, he expreſsly entails, ſo he does what he gives his Couzins, and uſes the Word _deſcend_ as he does here; as for the Word Inheritance, an Eſtate Tail
is

---

(5) Erroneouſly cited; the " Caſe of the Coats " is _Smith_ v. _Tyndal_, 2 Salk. 685.

(6) Sid. 312.  (7) Moore, caſe 153.

is as much an Inheritance as a Fee Simple. As for the Manner of England, I deny that he meant Common Law, he only intended it ſhould be partable as here; If his Intent could not be anſwered according to the Rules of Law, the Law will mould it into ſuch one, as is moſt agreeable to his Will and Deſign.

*Mr. Gridley.* The Intent of the Deviſor ſhall be the Pole Star of the Will, and then every Iota ſhall have its Force, if it can conſiſtent with the reſt. I agree that the Subject-Matter muſt govern in all Caſes; the Subject-Matter here is a Supply to William to build him an Houſe. With Regard to Mr. Trowbridge's Authorities, I ſee not how they are applicable; the firſt is a Common Law Conveyance, to be judged by Common Law Maxims, to be taken moſt ſtrongly againſt the Grantor; here the Intent of the Deviſor is to be purſued;—If the £300 is given for the Houſe, the Lands are given; they are tied by an indiſſoluble Band, and can't be ſeparated, but by a Violence upon Common Senſe. The Moor Caſe has *Item*, here is none. We muſt conſider of our Country and Real Eſtate here: To a Perſon unacquainted with our Eſtate, this might ſeem ſtrange, but to us who know Real Eſtates are liable for the Payment of Debts, and are by Act of Parliament made Chattels Real, for the Payment of Debts, (8) that they are almoſt the only Things we have to trade upon, and that they continue in a Family ſcarce over three Generations, 'tis not ſtrange they ſhould be put upon the ſame Footing with Perſonal Eſtate. In this I take it, both muſt be

ſupported

---

(8) Anc. Chart. 292.

fuppofed for the fame Purpofe, it is a Conftruction arifes from the Neceffity of the Thing, and the Nature of Real Eftate here. As for the Objection againft our Conftruction, that it is uncertain how long he would live; there was an Houfe for Paul, and one defigned for William; if there was none erecting, 'twas for one hereafter to be built, if one was built, to finifh it or to reimburfe him. As for the after Words; whether they fhall deftroy the Force of the Firft — the Words " after the Manner of England," — it being unlimited, it muft be Common Law; who would fuppofe Tail Male to mean the Manner of England ?

" The Heirs Male, and after to the Female; " the whole Complexion is to the Creation of a new Eftate ; this laft ought to be wholly laid afide, this extraordinary, impoffible Claufe.

If this Claufe operate at all, it can't take to the Manchaug Farm ; if that can be fatisfied elfewhere, it need not be applied here ; let it go to the Rox-bury Lands. 9 Mod. 154, *Adams* vs. *Clark*.

*The Chief Juftice* delivered the Judgment of the Court in Favour of the Fee Simple. (9)

---

(9) This judgment is recorded as of September term at Worcefter, but the entry bears evidence of having been inferted at a later date. The decifion was undoubtedly given, as here reported, at February term in Suffolk. It alfo appears that " immediately upon entering up this judgment, the faid Thomas moved for an appeal to his Majefty in Council, which the Court did not allow." The Province Charter provided for an appeal to the King in " perfonal actions " only. Anc. Chart. 32.

It is to be regretted that we have no means of afcertaining on what ground this decifion was given. If the Court were fatisfied that the

land,

Rec. 1762.
Fol. 385.

Evidence
of Payment
of full Rent
by a Tenant,
for thirty
Years, and of
the giving a
Note of
Hand for the
Balance
found due on
a Settlement,
is ſufficient
Proof of a
Contract to
pay Taxes
under the
Province
Law, which
provides that
" where no
Contract is "
the Landlord
ſhall reim-
burſe half the
Taxes.  *Ruſ-
ſell, J., diſſen-
tiente.*

---

land, as well as the money, was given " toward building the houſe," it was evidently excepted from any operation of the ſubſequent general clauſe. But if the effect of that clauſe became neceſſary to be conſidered, a more difficult queſtion muſt have ariſen.   The words directing a deſcent " according to the manner of England," &c., ſeem clearly to intend a common law deſcent, in oppoſition to the law of the Province.   But the words which immediately follow, " If either of my ſons die," &c., would ſeem to import an indefinite failure of iſſue, and to give the brothers eſtates in tail male general, with croſs remainders, alſo in tail male. *Abbott* v. *Eſſex Co.* 18 How. 202.   *Hall* v. *Prieſt,* 6 Gray, 18, and caſes cited.   The queſtion cannot be better ſtated than in Mr. Otis's words. *ante,* p. 20 — " Can an implied eſtate tail ever be raiſed, when the firſt words give an eſtate unknown to the laws of the country ? "   In the caſe of *Baniſter* v. *Henderſon, poſt,* 131, Mr. Auchmuty ſays that " the point of charge had weight " in this caſe.   This ſeems hardly probable, as one was directly on the rents and profits, and the other a charge of wood to be furniſhed from the land itſelf.   See 24 Pick. 139.   And even a perſonal charge of a ſum in groſs will not enlarge a clear eſtate tail, though only ariſing by implication.   2 Jarman on Wills, (1st Am. ed.) 172.   T. R. 535.   2 B. & Ad. 318.